UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JAMES L. SHAMBURGER, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. H-05-1964 |
| § | |
| JO ANNE B. BARNHART, Commissioner § | |
| of Social Security, § | |
| § | |
| Defendant. § | |

## MEMORANDUM AND ORDER

Pending before the Court in this action for review of Defendant's decision to deny Plaintiff Social Security disability benefits are the parties' cross-motions for summary judgment.[1]  Plaintiff James Shamburger seeks a determination that the administrative law judge ("ALJ") who adjudicated his disability claim relied upon unreliable testimony and failed to apply the pertinent evidentiary standard.  Defendant, the Commissioner of Social Security (the "Commissioner"), seeks an affirmation of the ALJ's decision.  After reviewing the parties' filings and the applicable law, the Court finds that Shamburger's motion, Docket No. 12, should be and hereby is **GRANTED** and that the Commissioner's motion, Docket No. 16, should be and hereby is **DENIED**.

I.  BACKGROUND

On March 28, 2002, Shamburger, who was then sixty-one years old, sustained injuries to his head, back, ribs, knee, and pelvis as the result of an automobile accident. He was hospitalized for nearly a month and subsequently underwent physical and

---

[1] While Defendant's brief is not captioned as a motion for summary judgment, it requests not only that the Court deny Plaintiff's motion but also that the Court affirm the ALJ's decision.  This prayer is consistent with the general practice in this type of case, which is generally decided upon cross-motions for summary judgment.  Accordingly, the Court construes Defendant's brief as such a motion.

1

occupational therapy to restore, *inter alia*, his ability to walk. His recovery efforts were complicated by preexisting conditions including sleep apnea, chronic obstructive pulmonary disease, and depression, the last of which was exacerbated by the head trauma that he sustained during the accident.

Shamburger filed an application for Social Security disability benefits, pursuant to Title II of the Social Security Act, 42 U.S.C. § 423, on November 2, 2002. His claim was initially denied, and he subsequently requested and received a hearing before ALJ Richard L. Abrams. At that hearing, the ALJ heard testimony from Shamburger, Medical Expert ("ME") Nancy Tarrand, M.D., and Vocational Expert ("VE") Herman Litt, M.A., C.R.C. The expert witnesses testified to their opinions concerning, respectively, Shamburger's physical condition and employment prospects.

The ALJ found that Shamburger was severely impaired and unable to perform his prior work duties[2] and that he possessed the residual functional capacity ("RFC") to perform light work, qualified by (1) Shamburger's need for a sit and stand option; (2) his limited ability to stoop, twist, crouch, kneel, or climb stairs or ramps; (3) his complete inability to crawl, balance, or climb ladders or scaffolds; and (4) his need to avoid hazards such as heights, vibration, and dangerous machinery. The ALJ further found that Shamburger was unable effectively to remember, understand, or carry out complex instructions.

Despite these limitations, the ALJ concluded that Shamburger was not disabled for the purposes of Title II, because he retained the ability to perform light work utilizing the transferable skills that he had acquired during his previous employment.

---

[2] Before the accident, Shamburger had worked as a payroll manager and a human resources manager.

2

Shamburger's request for an Appeals Council review of the ALJ's decision was denied. Shamburger then filed the instant suit.

## II.   ANALYSIS

### A.   Summary Judgment Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented.  *See* FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 4777 U.S. 317, 322 (1986) (internal quotation marks omitted).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could enter a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  This Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Id.* at 255.

### B.   Standard of Review

Judicial review of the ALJ's decision is limited to a determination "whether it is supported by substantial evidence on the record as a whole and whether the [ALJ] applied the proper legal standard."  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).  In scrutinizing the administrative record for such evidence, the Court may not re-weigh the evidence or substitute its judgment for that of

3

the ALJ. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only "where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (quoting *Harnes v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (citations omitted)).

### C.     Burden of Proof

A disability claimant bears the initial burden of proving that he is disabled. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). The evaluation of a disability claim is accomplished via a five-step process, as follows:

> (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment"; (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and (5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

*Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (citing *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990)).

"A finding that a claimant is not disabled at any point in the five-step process is conclusive and terminates the . . . analysis." *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). If the claimant can satisfy the first four prongs of the test, the burden then shifts to the Commissioner to establish that the claimant is capable of performing "substantial gainful activity" and, therefore, is not disabled. *Id.* To do so, the

4

Commissioner must produce "'expert vocational testimony or other similar evidence' that jobs exist[,] in the national economy[,] that the applicant can perform." *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986) (quoting *Ghorman v. Heckler*, No. 85-3444, slip op. at 9-10 (5th Cir. 1986), 782 F.2d 1038 (table)).

At step five, the ALJ must take into consideration the transferability of skills that the claimant has acquired through previous employment. The Social Security Administration ("SSA") defines and assesses transferability as follows:

> (1) What we mean by transferable skills. We consider you to have skills that can be used in other jobs, when the skilled or semi-skilled work activities you did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work. This depends largely on the similarity of occupationally significant work activities among different jobs.
> (2) How we determine skills that can be transferred to other jobs. Transferability is most probable and meaningful among jobs in which—
> (i) The same or a lesser degree of skill is required;
> (ii) The same or similar tools and machines are used; and
> (iii) The same or similar raw materials, products, processes, or services are involved.
> (3) Degrees of transferability. There are degrees of transferability of skills ranging from very close similarities to remote and incidental similarities among jobs. A complete similarity of all three factors is not necessary for transferability. However, when skills are so specialized or have been acquired in such an isolated vocational setting (like many jobs in mining, agriculture, or fishing) that they are not readily usable in other industries, jobs, and work settings, we consider that they are not transferable.

20 C.F.R. § 404.1568(d) (2000).

The SSA has stated that, in determining transferability, several considerations are particularly important:

> Reduced residual functional capacity (RFC) and advancing age are important factors associated with transferability because reduced RFC limits the number of jobs within an individual's physical or mental capacity to perform, and advancing age decreases the possibility of making a successful vocational adjustment. . . . All functional limitations included in the RFC (exertional and nonexertional) must be considered in

5

> determining transferability. . . . These factors[,] as well as the general capacity to perform a broad category of work (*e.g.*, sedentary, light[,] or medium)[,] must be considered in assessing whether or not a claimant has transferable work skills. If an impairment(s) does not permit acquired skills to be used, the issue of transferability of skills can be easily resolved.

S.S.R. 82-41 (Cum. Ed. 1982), 1982 WL 31389, at *5.

As suggested by the passage quoted above, a heightened transferability standard applies to cases involving claimants aged fifty-five or older:

> Transferability of skills for individuals of advanced age. If you are of advanced age (age 55 or older), and you have a severe impairment(s) that limits you to sedentary or light work, we will find that you cannot make an adjustment to other work unless you have skills that you can transfer to other skilled or semiskilled work (or you have recently completed education which provides for direct entry into skilled work) that you can do despite your impairment(s). We will decide [whether] you have transferable skills as follows. If you are of advanced age and you have a severe impairment(s) that limits to you no more than sedentary work, we will find that you have skills that are transferable to skilled or semiskilled sedentary work only if the sedentary work *is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry*. . . . If you are closely approaching retirement age (age 60-64) and you have a severe impairment(s) that limits you to no more than light work, we will find that you have skills that are transferable to skilled or semiskilled light work only if the light work *is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, processes, work settings, or the industry*.

*Id.* § 404.1568(d)(4) (emphases added); *see also Martin v. Heckler*, 748 F.2d 1027, 1035 n.6 (5th Cir. 1984) ("In order to find transferability of skills to skilled sedentary work for individuals who are of advanced age (55 and over), there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry.").

6

### D.     Shamburger's Claim

It is undisputed that Shamburger has satisfied the first four prongs of the disability analysis. The ALJ found, however, that the Commissioner had also borne her burden at step five, by demonstrating that Shamburger is capable of finding gainful employment in a position appropriate to his RFC. Shamburger now argues that the ALJ erred by (1) failing to ensure that the VE was aware of all relevant limitations on Shamburger's RFC and (2) failing to apply the heightened transferability standard.

In response to questioning by the ALJ during the administrative hearing, the VE testified as follows:

> ALJ: From [Shamburger's prior] jobs[,] are there any acquired skills that are transferable to other kinds of work?
>
> VE: Yes, sir.
>
> ALJ: What might those skills be?
>
> VE: Well, what you have with both [of] these [jobs,] they're in the area of business management. You know, applying math skills in the, in the payroll manager job to read and interpret business[es'] various types of reports and records, in both of these analyzing and interpreting administrative policy and procedure. In both of these you have planning and organizing the work of others, making decisions, fairly sophisticated decisions based on business reports or various types of data collected, typically speaking and writing clearly, preparing budgets, keeping records, dealing with, you know, the public, employees, various types of officials, etc., in a courteous and tactful manner. Those are the kinds of skills that you would find in these jobs, your Honor.
>
> ALJ: Okay. Thank you. Let me give you a hypothetical of the claimant, this claimant's age, educational background, and job experience as testified to at the light exertional level, and at that level let me add some restrictions. One would be a sit/stand option. One would be limited stooping, twisting, crouching, kneeling, [and] climbing of stairs or ramps. Another would be no crawling, balancing, [or] climbing of ladders or scaffolds. Another would be an avoidance of hazards such as heights, vibrations, and dangerous machinery. . . . And Dr. Tarrand, do you – from

7

your review are there any other restrictions that you would recommend mentally?

ME: He's going to have some residuals [from] this organic brain damage which are a little, a little bit difficult exactly to put into those restrictions.

ALJ: Because they're not well defined in the record.

ME: Well, they, they're defined. It's just that they don't fit easily in those categories, like evidence of slowed information and processing speed. I, I think that that probably would cut out competitive, complex job instructions. He might be able to do it at his own pace, but at a competitive pace probably not. Processing speed is one of the things that is notably damaged when there is organic brain damage even when IQ is, is preserved. And, for example, . . . his Trailmaking Test evidenced slow but accurate visual attention and vigilance, so it's the, the lack of speed problem. He also noticed – the, the claimant reported that he had difficulty with loss of initiative. That is another characteristic of organic brain damage. That's the thing that's difficult to say[:] how it's going to play out in a workplace setting. He should probably work in a low stress job. And based on his exam, I think he could do detailed but not complex instructions. I believe that those are the major –

ALJ: OK.

ME: – major things.

ALJ: So it would be detailed but not complex instructions. Okay, so add that to the restrictions that I mentioned. Are there any jobs in the light category that such a claimant could perform?

VE: Yes, sir, there are.

(Tr. of Admin. Hrg. at 18-20 (Admin. Rec. at 425-27).)

The VE went on to identify the light-duty positions of Teller, Collector, Ticket Agent, and Information Clerk, and the sedentary positions of Timekeeper, Payroll Clerk, and Claims Clerk, as available positions in the national economy that Shamburger is capable of performing. (*Id.* at 20-23 (Admin.. Rec. at 427-30).) According to the VE, the sedentary jobs involve "the kinds of skills that [Shamburger] would have used in maintaining the same type of setting, a sedentary office setting doing various types of

clerical work at a level that's not as complex as he used to do." (*Id.* at 23 (Admin. Rec. at 430)).) The VE was not asked about the ease of transition to the light positions.

Shamburger's attorney then asked the VE whether the identified light and sedentary positions could be performed by a person with Shamburger's RFC who also required an oxygen tank and a cane. The VE responded that such an individual could perform the sedentary positions. In light of the facts that the VE was present for the prior testimony of the ME, that the ALJ was careful to advise the VE of Shamburger's limitations, and that those limitations were further emphasized by Shamburger's counsel, the Court finds that the VE was aware of and considered Shamburger's RFC in evaluating his employability and the transferability of his skills.[3]

The ALJ did not, however, properly apply the heightened standard that governs transferability determinations regarding claimants of advanced age. Although the record reflects that the VE testified that Shamburger could perform the identified *sedentary* jobs "with little or no transition from previous work," (*id.*), the ALJ's decision was based only upon Shamburger's ability to transfer his skills to *light* positions. (ALJ's Decision at 6 (Admin. Rec. at 20).) The record contains no evidence that Shamburger could perform those positions with little or no transition, and, in fact, under questioning by Shamburger's attorney during the hearing, the VE conceded that an individual's need to use supplemental oxygen and a cane[4] would render him unable to perform the identified light positions. (Tr. of Admin. Hrg. at 23 (Admin. Rec. at 430).) Accordingly, the Court

---

[3] In his reply brief, Shamburger argues that, because the VE listed Shamburger's transferable skills *before* being instructed as to his RFC, the VE's opinion is invalid. The record reflects, however, that the VE was immediately informed of Shamburger's limitations and subsequently revised his list of positions to which Shamburger's skills could be transferred. Accordingly, the VE did not, as Shamburger alleges, impermissibly determine Shamburger's RFC or base his transferability testimony on an inaccurate understanding of the RFC.

[4] It is undisputed that Shamburger's injuries destroyed his balance.

9

finds that the ALJ's conclusion that Shamburger is capable of fulfilling the criteria for the listed positions is unsupported by evidence and must be vacated.

### III.     CONCLUSION

Because the ALJ's decision is based upon an inappropriate application of the heightened standard applicable to claimants of advanced age, Shamburger's motion for summary judgment is hereby **GRANTED**, the Commissioner's motion for summary judgment is hereby **REVERSED,** and Shamburger's claim is hereby **REMANDED** to the ALJ for further proceedings not inconsistent with this Memorandum and Order.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 2nd day of August, 2006.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**